Good morning, members of the panel, and may it please the Court, my name is really Walter Perilmore, but a long time ago I got nicknamed Wally Perilmore. I'm from the Eastern District of North Carolina, and I represent Mikel Bolander on this appeal. Please the Court, there are three different timelines that are applicable in this case. One is the major fact that the hands-on offense, the child molestation charge in this case, which was the basis of the first 1988 conviction in 1989, and there's absolutely no other evidence of any contact or child molestation by Mr. Bolander at any time in this case. It's not there. And that's important. And we go to a hearing, and it's almost a quarter of a century later, and that child the Court, is that he gets certified. He just happens to be in federal prison, and he's certified on the last day that he's to be there, February 9, 2007. And four years, 11 months, and two weeks pass while he sits at FCI Butner and is subject to the identical or, in some instances, more onerous conditions of a normal federal inmate. And he has his trial in January 19, 2012. And during that time, he was a pretrial detainee, and he was sitting there only in federal custody because of a supervised release violation. And then the third timeline, Judge, which is important to the judges, which is important to all of you, and anyone who understands this case, involves the Jaffe decision that came out of the Supreme Court of the United States in 1996, granting a psychotherapist patient privilege, basic public policy concerns that we want people to feel comfortable and that they can express things confidentially, even in a treatment program in prison. And 1997, when my client is first at Butner, November 5, 1997, he signs a document that says, in all times, that's November 5, 1997. This is about nine years before Adam Walsh is adopted by Congress. And at that time, I do not believe anyone could foresee that Adam Walsh was coming down the pike. I don't believe there was any type of movement in that area in terms of Congress or any type of public interest groups or anything of that nature. Well, let me ask you about the privilege. For the sake of argument, even if it applied in this case, why didn't he waive it? Number one, he disclosed the information to his own expert witness, who used it in the formation of his opinions and so forth. And he also testified at the evidentiary hearing on his behalf. And two, Mr. Bolander testified at deposition about the information concerned. And I understand that, Judge, and I understand the concern about waiver. But the issue in this case is this, and this is what's important. On April 4 of 2011, a retained expert by the government, who was not on the government payroll, Dr. Christopher North from the State of California, filed a report with the court under seal, which is in volume two of the SOTP, the Sex Offender Treatment Program Notes from Butner. And statements that were attributed to Mr. Bolander were in that report. And that happened before Mr. Bolander had any knowledge. There was no notice given to him that anybody was going to submit those records to Dr. North. He had no notice of Dr. North until that report was filed. Subsequent to that, yes, to comply with court orders, he was ordered, if it pleased the court, to participate with Dr. North. And as part of Rule 35, he was ordered to speak to his expert in knowing that anything that he said to his expert would be available as part of the report. Yes, he knew that. But the point, Judge, is that the damage in this case, the problems in this case, all happened before the alleged waivers that are documented in the brief of the government. And that is what is troublesome in this case. In other words, the government can go out and take documents which you believe are confidential, protected, that you made in a protected environment, consistent with the United States Supreme Court case, and give those documents. Were you counsel below? Yes, sir. Well, you know the rule in this circuit is that you can't waive a part of this type of report. You waive any of it, you waived all of it. Yes, sir. I understand what you're saying there. And I understand what the court's trying to say and is leading me to in response to your question, Judge Hamilton. And what I would say to the court, most respectfully, is that in this situation, in this specific situation, under this specific civil commitment statute, where the law was fluid, this court was working, trying to keep up with what was going on in litigation, decisions were being announced that came. In this specific situation, the injury, the violation of the privilege happened way before anything else happened in terms of the case. And that violation was something that could not be repaired or changed. It had happened and it was going to come into evidence. Did he have a patient-physician relationship when this information was given? He did at that time with the people at Butner. He had been to Butner twice. Well, now, was the evaluation at Butler, was it an evaluation for purposes of determining what his propensities were and so forth, or was it actually for treatment? Judge, that was back for treatment. That was back before Adam Walsh. That's why I was talking about the timeline and trying to emphasize that to the court. You left out a lot on your timeline. You left out a lot, all of his interim violations. Yes, sir. But the point is... And his failures of treatment. Yes, sir. And he did fail in treatment. And there's no question that Mr. Bolander's behavior back in 1997-98 at Butner did not help him in terms of his status at the hearing. There's no question about that. I mean, hands up on that. There's no question. But the issue, the issue is what does that privilege mean to someone who gets promised that my confidentiality, what I'm telling you, in this treatment program will be protected at all times nine years before Adam Walsh. Right, but he's also told in that confidentiality agreement, or he also acknowledged, I said, and U.S. Probation Office may share information regarding my case. And isn't that exactly what happened here? Judge Keenan, the word share and the word disclose are different in this case. And that's the problem. Can you share it without disclosing it? They disclosed it to someone who was out. My question is, can you share without disclosing it? You can share among the agencies, yes. I think they combined themselves to those four agencies, right there, probation, DOJ, Federal Bureau of Prisons. But the point of the matter is, is they took the information and shipped it out as part of preparation for a pretrial hearing. They shipped it out to California to someone to build their case for that purpose, to make their case stronger against Mr. Boland. And is that a violation of Jaffe? Yes. And what's the appropriate remedy there? The only remedy there is to take that out and say, you can't do that. And this hearing is tainted, and he's entitled to a new hearing because of that error. The disclosure is the problem in the case, in terms of Dr. North and the testimony in the case, and his access to things that are sealed up and protected in the district court, like pre-sentence reports. There's no application that I saw where anybody applied for permission to get released a pre-sentence report and send it to Dr. North. Nothing of that nature. None of that happens in this case. And it's like, it just grows from that point. Dr. North is the only government expert. Dr. Demby also testified, but she had written two reports, but she had never met with Michael Bolander. Dr. North did. It was under the magistrate's direction. And specifically, in that very specific situation, that information is, it just taints the hearing, and the privilege is absolutely made to be just worthless with respect to what Bolander said. Yes, Bolander was not acting. Are you relying on a privilege apart from that agreement, or are you relying on the agreement? I'm relying on both, Judge. I think both. I think that, and it's not a, I know it's a rule of court, and I know it's in the Federal Rules of Evidence and 501 and all those issues, and then Jaffe builds something on top of that. But in a broad sense, whatever we do in these courtrooms does have some constitutional basis to due process. And specifically, specifically, the agreement is there, and then the Jaffe rule is there, and Jaffe comes out a year or so before he signs this agreement. But the issue is, the government was using this in getting around this waiver, and doing this to build its case for certification of and detention of Michael Bolander. And that is the problem with the situation. As I said before, it appears clear that the only remedy is to grant him a new hearing without the testimony of Dr. North. And that's basically the position. And that timeline, again, again, and the court's right, 96, 97, and then all the way over to April 4, 2011, when Dr. North files his seal report, which is part of the seal joint appendix. And I would ask the court most respectfully to see that as an issue which is important. The policy behind disclosure, the policy behind someone being free, even in a prison, as a federal inmate and not then as a civil committee, someone waiting for a certification hearing for almost five years, the policy behind that is for him to disclose for treatment and to assist him in the future. It's the rehabilitation part of our sentencing process. And they took that rehabilitation process, the government did, twisted it on its head, and then used it to build its case against Mr. Bolander. The other issues, the issue about conditions of confinement, I would argue to the court that this case is very different from Tim's because there is an affidavit that's in the joint appendix that was signed by my client setting out specific issues about his living circumstances, his connections with the world, and how he was treated as an inmate, even though he was in the status for four years, 11 months or so, as a waiting certification hearing. I believe the conditions of confinement can be distinguished from Tim's, Comstack II, and the other cases based on that affidavit that was submitted to the court. That affidavit does create issues. And the court, without granting, and the district court, without granting a hearing, summarily denied that, no notice, nothing, and then the next week the certification hearing is conducted. So that basically is that timeline. The other timeline, believes the court, is the general fairness in going back and taking a conviction 25 years old and using that as a basis to hold somebody in certification and put them into the status he has at Butner in a prison. So that's the one I thought you understated because he has been engaged in, literally continuously, trafficking and child pornography. Yes. Since then. But the point is, Judge. And they're all serious violations. Yes. But the issue is there, and this is important, the issue is there. Yes, the child pornography there, but it's not child molestation. And whether child pornography is a substitute or another mechanism for someone to deal with those types of urges or issues is another issue. But in terms of, and when you bear it right down to the thing that's important in Adam Walsh, the theory of Adam Walsh is child molestation. And they're not one and the same. Yes, he did child pornography, but the record is full, as Dr. Warren testified, that is replete that for the years that he was out of prison, Michael Bolander did not engage in child molestation. We have one hands-on offense 25 years ago. And that is, in my mind, believes the court, not sufficient for him to be in his status that he is today. Thank you. Thank you. Mr. Gray. Good morning, Your Honors. My name is Edward Gray. I'm an Assistant United States Attorney in the Eastern District of North Carolina, and I represent the appellee in this case, the United States. With regard to the argument, what I will do is I will address the fourth issue raised by the appellant in his brief, and then turn to the first issue with regard to privilege. We feel, and we'll stand on our brief with regard to the second and third issues, feeling that Circuit Precedent has adequately addressed those issues, particularly with respect to the court's holdings in Thames. With regard to the fourth argument, there's plenty of information within the record to support a finding of sexual dangerousness. Not only do we have the testimony of two evaluators who had an opportunity to see Mr. Bolander on a day-to-day basis with Dr. North and Dr. Demby, but we have clear evidence that what they opined about was not a result of a past pedophilic instinct or pedophilic behavior, but was a current condition of pedophilia that was so strong, it led Mr. Bolander to Dr. North in an interview, his feelings that the idea of pedophilia is more of a sexual orientation as opposed to a criminal act. It is as a result of those sort of statements that Dr. Demby was able to say that what Mr. Bolander was describing was what she called the four Ps, and on JA page 551, and I'm going to paraphrase it, the precocious, persistent, and constantly pushy, prepubescent, who is the type of person that Mr. Bolander on several occasions would describe his victims as. There's ample evidence within the record to indicate that at the time of civil commitment and at the current time, Mr. Bolander clearly was going to have serious difficulty refraining from child molestation if he is released by his own views, by his own statements, and his own determinations. With regard to the several occasions that when it comes to a privilege, there's essentially three things that need to be done. The privilege needs to be clearly identified. It needs to be asserted and asserted, it's got to be zealously guarded, and you've got to zealously guard it often. And as Judge Hamilton, as you noted, in this case, not only do we have a waiver of express waiver by the signed statement on JA 148, the waiver document, which Judge Keenan, you identified, said that the government could use it to share this information and provide it to others for evaluation, but there's also an extensive history of implied waiver throughout the course of this hearing. There was no objection to the use of this medical information within the PSR that was the basis of his original sentence. There was no objection raised to the use of any of this information when Dr. Demby filed her initial report to the court in April of 2011. Still, there was no objection lodged by Mr. Bolander four months afterwards when he identified his own expert who was going to be using this same information to provide information with regard to his overall mental status. There was no objection raised when there was a motion by the government to ask the court to order Mr. Bolander to go through a court-ordered examination to determine his mental status. It wasn't until December of 2011 that the first objection is made, but this is after this information has already been considered by Dr. Demby, who, in his brief, they do not object the was their selected examiner, and they don't object to the use of that information by him, by Dr. North, and repeatedly within the PSR. So we're talking about numerous instances in which Mr. Bolander would have waived his overall privilege, and that's not including his testimony at trial or his testimony in deposition during the course of the litigation. Ultimately, when we're talking about Mr. Bolander, we clearly have an express waiver as well as an implied waiver. But let's take a look at the overall impact of the argument that Mr. Bolander is raising in this case. Ultimately, as this court is very well aware, the issue when it comes to an Adam Walsh case, particularly with regard to civil commitment, is the question of, is the court getting sufficient information in order to make this extremely important decision? This decision is not simply about the safety of society, but it's also about the possible deprivations of civil liberties by the respondent. And it's imperative that courts be allowed to consider as much information as possible with regard to determining a respondent's mental condition. It is necessary that a person's past treatment come into consideration by the court. And it's imperative that that consideration by the court also be made by the experts who are using their knowledge to help inform the court as to what the current mental status is of a respondent. If we take a look at the information in this case, there is information that comes from his past medical treatment that is negative. For instance, the fact that he had stolen pedophilic materials from the Atascadero State Hospital and used it as a masturbatory stimulus while he was incarcerated, that was noted within his medical records, and that's clearly something that's a negative for him. However, there's other information that shows that he did progress in treatment, for instance, his participation in group treatment projects, and that is something that should be considered by the court and isn't necessarily a negative. So when we start talking about the issue of the patient and patient provider privilege, particularly with respect to these sort of cases, it's important to understand that we're not only balancing the privacy concerns of the petitioner in this case, which needs to be zealously guarded at all times, but we're also talking about the fundamental nugget of Jaffe where the Supreme Court said occasionally this privilege has to give way for the greater good. And in this case, the greater good is not only the protection of the respondent, in this case Mr. Bolander, but also a fair evaluation by the court. Your Honor, with regard to the issues that were raised in points two and three of the brief, we feel very strongly that those issues have been resolved by the court with regard to Tim's and its other past precedents. With regard to sufficiency of the weight to determine whether or not Mr. Bolander suffered from pedophilia and whether or not there was sufficient evidence presented during the hearing for the court to make a determination that he in fact suffered from a serious mental illness, abnormality, or disorder, and as a result of which would have had serious difficulty refraining, was also adequately shown, and we feel that the court's recent precedents with regards, shown in United States v. Wooden and United States v. Caporal, support the findings of the district court. Unless there's any questions from the court, that concludes my arguments. Thank you, Mr. Gray. Thank you. Mr. Paramore. Mr. Gray makes the reference to privacy, which is an essential part of our country, and again, the expectation of Mr. Bolander in 1997, when he went in and started with the Sex Offender Treatment Program, was that he would have privacy, and he went in, the case law in the United States said that he had privacy, he went in, he signed a document that did have exceptions but said nothing about disclosure to third parties, and in that, please the court, there was a commitment by the United States of America that we will protect your privacy, and by Mr. Bolander receiving that commitment, that you will honor that, and so I can talk freely with you and participate with you. Are you talking about the program in California? No, sir, I'm talking about the one at FCI Butner that he started in 1997. And I'd ask the court in this panel to realize that the government promised to keep this information private. How do you understand the limitation on that promise in the agreement? Who can get that information? Can an expert witness for the government use it if it's allowable to the government? The government should, in my mind, have applied for relief from the court before it retained Dr. North to share that information with him. It would have been a matter where there would have been notice, hearing. That's a, I'm trying to figure out what the language of the scope of the exception. Well, it says it gives way, and Jaffe doesn't say anything about what that means in that language. It gives way. And the issue is whether public policy in terms of supporting a patient, psychiatrist, or psychotherapist privilege is greater than giving way. And in this situation, when the government is obviously building a case, they're building a case and they're getting ready to go forward with certification, I mean to hearing after certification. And if it pleases the court, in that specific situation, they're being an advocate. They're preparing for court. And it's not within the scope of the give way Jaffe situation. It's not a situation where we have a state criminal case or a federal criminal case where there's some issue about that type of issue, which has come up with someone talking to a therapist in the past. That's not it. And the issue is depriving this person of their liberty after they've served criminal sentences and they're supposed to be on supervised release and it's in a civil context. And what does give way mean? And I would argue to the court that it does not mean in this situation that you can disclose this information to a third party that you've retained to participate in a hearing down the road. But Jaffe already says, Jaffe also says that you can waive this. Yes, you can definitely waive that. So aren't we, I mean, we really have to take a close look at that language of the waiver. Yes, but the waiver, and again, it pleases the court. That's the reason I talked about a timeline. The disclosure is made long before and just two months after I'm in the case. Actually, the disclosure information is made long before I'm in the case. And it shows up in a report two months after I'm in the case, which is sealed. And the damage has been done. The cat's out of the barn. And the situation is clear that there's nothing left to be done but to try to stop Dr. North from being a witness. And at that point in time, we were under court rules to comply with respect to meetings with Dr. North and with respect to Ron. How does Dr. Warren testify without meeting his client? And so basically, in this specific situation, I believe that Jaffee was violated in specifically the contract that Mr. Bolander, the privileged agreement that he had with the government, was violated. And it's a very significant issue to him. And he's locked up in a civil status and not a criminal status because of that. And I most respectfully would ask the court to allow him a new hearing. Thank you. Thank you, Mr. Carramore. I note you were court appointed. I want to express our appreciation for that and recognize it publicly. It's an important service. We'll come down and re-counsel. Please adjourn court until tomorrow.
judges: Paul V. Niemeyer, Barbara Milano Keenan, Clyde H. Hamilton